UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWN S.,

            Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00898 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Dawn S. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 14; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, Plaintiff's motion (Dkt. 14) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 16) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on May 22, 2015. (Dkt. 6 at 19, 77).[1]  In her application, Plaintiff alleged disability beginning January 1, 2014. (*Id.* at 19, 210). Plaintiff's application was initially denied on October 21, 2015. (*Id.* at 19, 91-102). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Marilyn D. Zahm on August 3, 2018, with Plaintiff appearing in person in Jamestown, New York, and the ALJ presiding by video from Buffalo, New York. (*Id.* at 19, 37-76). On September 12, 2018, the ALJ issued an unfavorable decision. (*Id.* at 16-36). Plaintiff requested Appeals Council review; her request was denied on May 8, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 22, 2015, the application date.  (Dkt. 6 at 25).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: migraine headaches; asthma; allergies to bees, seafood, and outdoor plants; bipolar

disorder; and post-traumatic stress disorder ("PTSD"). (*Id.* at 22). The ALJ further found that Plaintiff's medically determinable impairment of vision problems was non-severe and that any symptoms associated with the removal of a skin growth on her abdomen and/or the removal of her thyroid and parathyroid glands did not last for a period of twelve months or more. (*Id.* at 22-23).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 23). The ALJ particularly considered the criteria of Listings 3.02, 11.02(B), 12.04, and 12.06 in reaching her conclusion. (*Id.* at 23-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [Plaintiff can] never be exposed to bright, flashing lights or loud sounds, never be exposed to concentrated smoke, dust, or other known respiratory irritants, never interact with the public, never work outdoors, never work in environments with seafood, and perform only simple, repetitive work.

(*Id.* at 25). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mailroom clerk, stock checker, and packaging machine tender. (*Id.* at 30-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 31).

## II.     Further Administrative Proceedings are Necessary

Plaintiff asks the Court to either reverse or remand this matter to the Commissioner for further administrative proceedings. As an initial matter, the Court notes that Plaintiff's brief is very difficult to follow. Rather than organizing her arguments in a cohesive manner, Plaintiff's counsel has taken a scattershot approach, interspersing a regurgitation of the medical records with citations to caselaw, without any explanation of how that caselaw applies specifically to the facts of this case. This manner of briefing places an undue burden on both opposing counsel and the Court, who must sift through Plaintiff's submission and try to piece together the arguments counsel is attempting to make. This is not the first time Plaintiff's counsel has submitted such a brief to the Court, and she is encouraged to take a more careful approach in the future.

Having thoroughly reviewed Plaintiff's submission, the Court understands her to be advancing the following arguments: (1) the ALJ failed to properly weigh the opinion of consultative neurologic examiner Dr. Michael Rosenberg; (2) the ALJ failed to properly weigh the opinion of consultative psychiatric examiner Dr. Kristina Luna; (3) the ALJ erred in failing to fully credit Plaintiff's subjective reports regarding the symptoms of her migraines and mental health conditions; (4) the ALJ failed to discharge her duty to develop the record; and (5) the ALJ failed to properly take into account the cyclical nature of mental health impairments. The Court has considered these arguments and, for the reasons set forth below, agrees that the ALJ erred in assessing Dr. Rosenberg's opinion and finds that this error requires remand.

A.     **<u>Assessment of Dr. Rosenberg's Opinion</u>**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Under the regulations applicable to Plaintiff's claim, the ALJ was required to "evaluate every medical opinion" of record and "explain in the decision the weight given" to the opinions of consultative examiners. *Duell v. Astrue*, No. 8:08-CV-969, 2010 WL 87298, at *5 (N.D.N.Y. Jan. 5, 2010) (citations omitted).  While the ALJ was free to reject those portions of a consultative examiner's opinion that she found inconsistent with the medical evidence of record, *see Jessica E. v. Saul*, No. 5:18-CV-543 (CFH), 2019 WL 3776157, at *8 (N.D.N.Y. Aug. 12, 2019), to the extent "a medical source opinion was not adopted in full," she was required to explain why, *Gonzalez v. Colvin*, No. 15-CV-6216, 2016 WL 5793425, at *8 (W.D.N.Y. Sept. 30, 2016).

Dr. Rosenberg performed a neurologic examination of Plaintiff on August 27, 2015. (Dkt. 6 at 547).  Dr. Rosenberg diagnosed Plaintiff with migraine headaches, bipolar disorder, asthma, and "back pain by history only." (*Id*. at 549).  He opined that Plaintiff was "restricted from any activities that entail exposure to bright flashing lights and loud sounds," had a "limitation for activity which requires continuous and uninterrupted activity secondary to her migraine headaches," and "should avoid smoke, dust, and other known respiratory ailments." (*Id*. at 549-50).  In her decision, the ALJ adopted the majority of Dr. Rosenberg's opinion, but declined to find that Plaintiff had a limitation for activity requiring continuous and uninterrupted activity secondary to her migraine headaches. (*Id*. at 29).  The ALJ stated that Dr. Rosenberg had based this assessment on Plaintiff's self-

report that she experienced migraines at an 8/10 pain level four to five times per week, but that the medical evidence of record "does not support her statement as to the frequency or severity of headaches." (*Id.*).

The ALJ's explanation for discounting Dr. Rosenberg's opinion was not supported by substantial evidence. The ALJ gave three reasons for her conclusion that "the record does not support [Plaintiff's] assertions that she has had migraine headaches as frequently or as severely during the period at issue": (1) Plaintiff was not prescribed medication for treatment of migraine headaches during the relevant time period; (2) Plaintiff "denied headaches symptoms [sic] at times," and; (3) "[a]t the hearing, when questioned about what triggers her migraine headaches, [Plaintiff] stated, 'I don't know because it's been so long since I've had a migraine headache.'" (*Id.* at 28 (original alteration omitted)). None of these reasons can bear scrutiny.

Most egregiously, the ALJ's written determination contains a mischaracterization of Plaintiff's hearing testimony. Plaintiff did not state at the hearing that she did not know what triggered her migraine headaches because it had been so long since she had one. To the contrary, Plaintiff stated that she suffered from migraines "[a]nywhere from 15 to 20 days a month," and that she had migraines that made her "throw up and lay in bed all day . . . about 10 days per month." (*Id.* at 52). Further, when Plaintiff's attorney questioned her about the triggers for her migraines, Plaintiff stated "<u>I've had them for so long</u>, I don't know what really triggers them, except for the same things that trigger a seizure will trigger a migraine." (*Id.* at 61 (emphasis added)). This statement has a completely different

meaning from the inaccurate paraphrase contained in the ALJ's written determination.[2] The ALJ's misstatement of Plaintiff's hearing testimony does not constitute substantial evidence to support a rejection of Dr. Rosenberg's opinion. *See Hill v. Comm'r of Soc. Sec.*, No. 14-CV-09665 GBD BCM, 2017 WL 5632813, at *5 (S.D.N.Y. July 28, 2017) ("It is well-settled that an ALJ may not mischaracterize the record, nor rely on such a mischaracterization to meet the substantial evidence test."), *adopted*, 2017 WL 5634679 (S.D.N.Y. Nov. 21, 2017).

Further, the evidence cited by the ALJ in support of her conclusion that Plaintiff sometimes denied having headaches consists of the following: (1) an "Adult Mental Health Discharge Summary" related to a hospital admission for a "drug overdose and suicide attempt" in May 2016, at which time Plaintiff reported "no headache"; (2) treatment notes from an endocrinologist visit in May 2018 where "migraine" was listed under Plaintiff's "ongoing problem list," but Plaintiff was not actively suffering from a headache; and (3) treatment notes from a surgical follow-up appointment on May 12, 2018, where Plaintiff indicated she was not experiencing a headache, but where "migraine" was again listed on her "ongoing problem list." (Dkt. 6 at 28 (citing *id*. at 614, 632, 698-99)). These medical records merely show that on three discrete occasions, Plaintiff was not actively suffering from a migraine when she attended a doctor's appointment. The ALJ failed to offer any explanation for how that fact supported the larger conclusion that Plaintiff was misrepresenting the frequency and severity of her migraines. It was improper for the ALJ

---

[2]   The Court notes that Plaintiff's counsel failed to point out the ALJ's misstatement in Plaintiff's brief; the Court discovered it during its own review of the record.

to "cherry pick" these three discrete occasions without acknowledging the numerous other occasions on which Plaintiff did report suffering a headache. *See Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (finding improper cherry picking where the ALJ "chose to focus on only one part of a conflicting medical record" and incompletely recited the record).

Finally, the ALJ's statement that Plaintiff was not taking prescription medication to control her migraines is devoid of the necessary context. While the ALJ noted that "[Plaintiff] contended that medication is ineffective," (Dkt. 6 at 28), she failed to note that the medical evidence of record supports Plaintiff's assertion. For example, treatment notes from Plaintiff's primary care physician dated May 21, 2012, reflect that Plaintiff was suffering from migraines approximately twice per week, that she had tried taking Topamax for her migraines but had ended up in the hospital suffering from "mental confusion, memory loss, and dizziness," and that she was then taking Fioricet for her migraines "with no relief." (*Id*. at 302). Similarly, records from Dr. Nicolas Saikali of the Dent Neurologic Institute from August 2, 2012, indicate that Plaintiff was suffering from migraines "20 to 25 days a month" and that she had tried taking Topamax, amitriptyline, and Fioricet, all without significant relief. (*Id*. at 293-94). Plaintiff also underwent Botox injections in 2014 an attempt to treat her migraines. (*Id*. at 275). Plaintiff's discontinuation of prescription medication that failed to relieve her symptoms does not constitute substantial evidence for the ALJ's conclusions.

In sum, the ALJ's rejection of Dr. Rosenberg's opinion that Plaintiff was limited in her ability to maintain continuous and uninterrupted activity was based on an incomplete

and mischaracterized record, and consequently was not supported by substantial evidence.

Nor was this error harmless. Defendant contends that Plaintiff has presented merely subjective complaints of debilitating headaches. (Dkt. 16-1 at 18-19). However, Dr. Rosenberg is an acceptable medical source under the applicable regulations, and his opinion was based on his own examination of Plaintiff.

Defendant further contends that the ALJ's RFC finding actually does incorporate all the limitations identified by Dr. Rosenberg, because Dr. Rosenberg's limitation on Plaintiff's ability to maintain continuous and uninterrupted activity "appears to refer to Plaintiff's ability to concentrate," and the ALJ limited Plaintiff to simple and repetitive work. (*Id*. at 17). This argument is pure speculation by counsel. While the ALJ arguably could have determined that a limitation to simple and repetitive work was sufficient to account for the limitation identified by Dr. Rosenberg, she did not do so. Instead, she made it clear that she had not credited this portion of Dr. Rosenberg's opinion and had not incorporated it into the RFC finding. Neither this Court nor counsel can say, on the instant record, what impact a proper assessment of Dr. Rosenberg's opinion would have had on the RFC finding. *See Danette Z. v. Comm'r of Soc. Sec*., No. 1:19-CV-1273 (ATB), 2020 WL 6700310, at *7 (N.D.N.Y. Nov. 13, 2020) ("[A]ny explanation that the ALJ failed to provide cannot be supplied by the Commissioner post hoc." (citation and original alteration omitted)). Remand is thus required.

### B. Plaintiff's Remaining Arguments

As set forth above, Plaintiff has made several other arguments as to why the ALJ's determination was not supported by substantial evidence. However, because the Court has

already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Samantha D. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1280 (ATB), 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020) (declining to reach arguments concerning whether ALJ's findings were supported by substantial evidence where the court had already determined that remand was necessary); *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 240-41 (W.D.N.Y. 2019) (same).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 14) is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 16) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                                   ELIZABETH A. WOLFORD
                                                                   United States District Judge

Dated: March 12, 2021
           Rochester, New York